## RUBENSTEIN v. RADT.

### (Supreme Court, Appellate Division, First Department. June 18, 1909.)

1. REFORMATION OF INSTRUMENTS (§ 46*)—SUBMISSION OF QUESTION TO JURY.
    It was entirely irregular to submit to a jury the question of reforming a contract, as such a question is addressed to the court's equitable jurisdiction, whereas a jury has no place in equitable actions except to decide specific questions of fact submitted to them.
    [Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 194; Dec. Dig. § 46.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRIAL (§ 3*)—SEPARATE TRIALS IN SAME CAUSE—EQUITABLE COUNTERCLAIM
IN ACTIONS AT LAW.
> The proper practice where an equitable counterclaim is interposed in
> an action at law is to procure an order directing separate trials in the
> appropriate forum of the separate issues; and when the counterclaim, if
> established, will determine the whole controversy, the equitable issues
> should be tried first.
> [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 6, 7; Dec. Dig.
> § 3.*]

3. APPEAL AND ERROR (§ 1053*)—CURE OF ERROR—ADMISSION OF EVIDENCE.
> Where irrelevant evidence is admitted and supported by a charge which
> allows the jury to infer a fraudulent intent by plaintiff from the mat-
> ters covered by such testimony, the error of its admission is not cured by
> an attempt to strike out the evidence after the charge was given.
> [Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1053.*]

Appeal from Trial Term, New York County.

Action by George Rubenstein against Max Radt for breach of con-
tract. From a judgment for defendant, and from an order denying a
new trial, plaintiff appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN,
HOUGHTON, and SCOTT, JJ.

Alton B. Parker, for appellant.
I. Maurice Wormser, for respondent.

SCOTT, J. The plaintiff appeals from a judgment upon a verdict.
The plaintiff is a lawyer. The defendant is, or was, the vice president
and manager of the Jefferson Bank, which was located on Canal street,
in the City of New York, between Eldridge and Forsythe streets.
Plaintiff's father owned the whole of the block on the southerly side
of Canal street, on which was also located another bank called the
Monroe Bank. Defendant in the interests of the Jefferson Bank
desired to eliminate the Monroe Bank as a competitor, and further
desired to be assured that no other bank should be located on the same
block as a competitor with the Jefferson Bank. He made a written
agreement with plaintiff dated December 8, 1905, to the effect that he
would pay the latter the sum of $4,000 if he could secure agreements
or options for the purchase of two-thirds of the capital stock of the
Monroe Bank, and would also secure from his father, Louis Ruben-
stein, an agreement that he would not allow any part of the premises
which he owned on the south side of Canal street to be used for the
purposes of a business bank "so long as the Jefferson Bank shall re-
main on the premises now occupied by them." Plaintiff succeeded in
his negotiations for the purchase of the stock of the Monroe Bank,
and on January 31, 1906, an agreement was made by defendant to
purchase from the holders thereof on March 10, 1906, not less than
1,334, nor more than 1,350, shares of the capital stock of the Monroe
Bank at $125 per share. Plaintiff, who was present when the agree-
ment was concluded, asked when he would be paid, to which de-
fendant replied that he would have to wait until March 10th, and
that, if he would then bring the agreement from his father, he would
be paid the agreed fee. On March 10th plaintiff, having procured

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the required agreement from his father, tendered it to defendant, who refused to receive it, and declined to pay the $4,000. His reason for so refusing arose from the following circumstances: The Jefferson Bank held as a tenant under a lease which ran to May 1, 1906, but which contained a covenant that the bank by exercising the option so to do on or before February 1, 1906, might extend its lease for five years, and thereafter under like options might extend it to 1926. The defendant forgot to exercise the option on behalf of the bank on or before February 1, 1906. It does not appear that anything was done by plaintiff or his father which in any way influenced defendant, or caused him to omit to give the necessary notice that the bank would exercise its option to renew or extend the lease. The defendant has twice amended his answer.

In the original answer he denied the agreement with plaintiff in toto. In the first amended answer he admitted making the contract, but denied that it expressed the true agreement between the parties, and gave a version of what he claimed to have been the true agreement, which does not correspond with the allegations in that regard made in the second amended answer upon which the cause was tried. In the present answer the defendant, alleging that the written contract does not express the real agreement between the parties, and by way of a separate defense and counterclaim, seeks to have the written contract reformed so that it shall recite, as the agreement which plaintiff undertook to procure from Louis Rubenstein, his father, one that he would not allow his other property on the same block to be used for the purposes of a bank "during the period of the lease now held by the Jefferson Bank from the said Louis Rubenstein, together with the periods of renewals and options for renewal provided for in said lease." The defendant's allegations were that this was the actual agreement made between himself and plaintiff, and that he was led to sign the written contract upon plaintiff's false statement and representation that the contract as drawn did in legal effect express the agreement as defendant alleges that it really was. The whole controversy on the trial related to the issues tendered by the counterclaim, for if the contract was to be reformed, as defendant claimed it should be, it would appear that plaintiff had not performed it, and was not entitled to recover his agreed fee.

For some reason for which no explanation appears in the case, both parties seem to have agreed that the issues should be tried at Trial Term, and the question of the reformation of the contract submitted to the decision of a jury. This, of course, was entirely irregular. The question whether or not the contract should be reformed was addressed to the equitable jurisdiction of the court. The function of a jury is to decide questions of fact in cases addressed to the legal jurisdiction, and they have no place in an equitable action, except to decide specific questions of fact which may be submitted to them. The proper practice in a case where an equitable counterclaim is interposed in an action at law is to procure an order directing separate trials in the appropriate forum of the separate issues, and when, as in the present case, the equitable counterclaim, if established, will determine the whole controversy, the equitable issues should be first tried. Goss

v. Goss & Co., 126 App. Div. 748, 111 N. Y. Supp. 115. We have no doubt that the failure to follow the practice led directly to the result attained in the present case, for upon the evidence it does not seem probable that any judge sitting in equity would have decreed a reformation of the contract. As the case was, however, tried before a jury, it will be necessary to scrutinize the record in view of that fact. The principal question in the case was whether or not on December 8, 1905, the plaintiff had falsely stated to defendant the legal effect of the language used in the contract with reference to the agreement to be made by Louis Rubenstein. The plaintiff was not attorney for defendant, and held no confidential relation to him; and it is not clear that any misstatement as to the legal effect of the contract would justify a reformation. The case was tried, however, apparently by common consent, as if it would. Much evidence was introduced that was wholly irrelevant to any question involved. Of course, the neglect of defendant on February 1, 1906, to exercise the option for the Jefferson Bank put him and the bank at a great disadvantage. An action was afterwards commenced by the bank to compel Louis Rubenstein to renew the lease. This was finally discontinued upon terms which left the bank with a less favorable lease than it previously had. The defendant was allowed to prove all this, and also to prove the amount of money which the bank had expended upon the building, and also negotiations with other parties having no relevancy to any matter at issue, but calculated to impress the jury with the hardship which the bank had suffered in consequence of failing to exercise its option for a renewal. The theory upon which this evidence was admitted is illustrated by the instructions upon the law embodied in the charge. The learned justice said:

"While the difference in the words to be used might have been of no practical importance as viewed in December, 1905, yet as viewed in the light of the events that happened afterwards there was a vast difference in effect, because had Rubenstein, Sr., signed the agreement in the words the defendant claims were to be used, he would be debarred from claiming a default on the part of the Jefferson Bank in requesting a renewal of the lease. If the plaintiff had in mind when the agreement of December 8th was made that his father might claim that the Jefferson Bank had defaulted in demanding a renewal, and that plaintiff had chosen language which might have apparently expressed the agreement of the parties, and yet leave an opportunity to claim a different construction when opportunity required—if this were so, and if at the time Radt signed the agreement with plaintiff he asked him if the agreement provided the limitation of the use of the Canal Street block during the term of the lease and its renewal, and the plaintiff answered that it did, and the defendant, relying upon the plaintiff's statement signed the paper, then the plaintiff was guilty of fraud."

Thus the learned court starting out with an erroneous statement of the legal effect of the agreement if made as defendant claimed that it should have been, linked together the agreement of December 8, 1905, with the defendant's oversight on February 1, 1906, which could not have reasonably been anticipated by plaintiff, which he was powerless to promote, and with the happening of which he had nothing to do. In short, the jury was given to understand that they might impute to plaintiff the fraudulent design on December 8, 1905, to take advantage of a most improbable oversight by defendant nearly two

months later. In view of the charge, the evidence erroneously admitted may well have induced the verdict, and the attempt to strike out the evidence after the charge was delivered and the mischief done did not cure the error. Our attention is called to other errors, some of which are apparently serious, but which do not require detailed examination because they will probably not arise upon a retrial. It is sufficient to say that the case was tried upon an entirely mistaken view of the rules governing actions for the reformation of written instruments.

The judgment and order appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.